**People of the State of Illinois, Complainant-Defendants in Error, v. Lee Roy Jensen, Defendant-Plaintiff in Error.**

**Gen. No. 11,290.**

Second District, Second Division.
February 8, 1960.
Released for publication February 25, 1960.

T. R. Johnston, of Kankakee, and Joseph J. Mc-Govern, of Chicago, for plaintiff in error.

Frank W. Curran, State's Attorney (Edward P. Drolet, Assistant State's Attorney, of counsel) for defendant in error.

JUSTICE CROW delivered the opinion of the court.

This is a writ of error by the defendant, Lee Roy Jensen, plaintiff in error, to review a judgment of conviction and sentence of October 16, 1958, of 180 days at the State Penal Farm at Vandalia entered in the County Court of Kankakee County, following a verdict of guilty by a jury at a trial upon an information charging the defendant with driving a motor vehicle upon a public highway in Kankakee, June 8, 1958, without having in his possession a valid operator's license and at a time when his operator's license had been revoked by the Secretary of State.

On September 25, 1958, the Court ordered a venire to issue by the Clerk for 18 men and women from the body of the County, returnable October 2, 1958, to serve as petit jurors, which was issued, and the veniremen summoned. On that date the case proceeded to trial, a jury panel of veniremen was sworn to answer questions, was examined by the State's Attorney and attorneys for the defendant, and the jury was accepted and sworn to try the issues. At the conclusion it

was stipulated by the attorneys for the defendant and the State's Attorney, in open Court, that the jury might return a sealed verdict, to be opened by the County Judge, and any motions following the opening thereof to be made October 16, 1958, before the County Judge of another County who had tried the case upon a change of venue requested by the defendant. On October 3, 1958, in open Court in the presence of the defendant and his attorneys and the State's Attorney, the sealed verdict of the jury was opened, finding the defendant guilty, it being signed by all jurors, and below their signatures appeared the words "with recommendation for maximum leniency," and the case was continued to October 16, 1958. At that time the defendant made an oral motion for new trial, and an oral motion for judgment notwithstanding the verdict, which motions were denied, a judgment of conviction was entered on the verdict, and the defendant's then motion for probation was referred to the Probation Officer and the cause continued to November 6, 1958, for a hearing thereon and of any evidence in mitigation or aggravation. At that time, after a hearing, at which the defendant presented no evidence, probation was denied and the defendant sentenced.

The material evidence was substantially to the effect that the defendant had been driven by a friend in the defendant's brother's auto to the I. C. depot in Kankakee, about 11:30 p. m., June 8, 1958, to get the Sunday papers. The auto had been parked on the street in a space reserved for people having business at the depot. The papers not being in, they went across the street to a hotel to wait. While there the friend received a call from home and left. The Sunday papers were not ready until later. The defendant tried to find someone to drive the car off the street, but could not. About 3:00 a. m., he got into the car for the purpose, he says, of driving into a parking lot next to the depot about 100 feet down the street. He

says he had driven only about 60 steps (or, at another place, 60 feet) when he was arrested. He had no operator's license at the time. It had previously been revoked pursuant to a prior conviction for driving a motor vehicle while under the influence of intoxicating liquor, and a restricted driving permit, applied for by the defendant, had been denied. The arresting officer, who had observed the defendant driving, said the defendant had driven about a half block before he was stopped, and did not ask to put the car in a parking lot, but said, instead, that he was only two blocks from home and wanted the officer to let him go home, which the officer refused.

The defendant urges here, in his "errors relied upon for reversal" that the Court erred in these respects: (1) in receiving the sealed verdict of the jury and opening it without the jury being present, thereby making it impossible for the defendant to poll the jury; (2) in not following the provisions of the statute in selecting the panel of jurors; (3) in admitting incompetent evidence at the hearing on aggravation and mitigation; (4) in refusing to give two instructions tendered by the defendant; (5) in imposing an excessive penalty, not proportionate to the nature of the offense; (6) in denying his motions for new trial, and in arrest of judgment, and for release on probation; and (7) he did not receive a fair and impartial trial.

The People urge, at the outset, that the defendant failed to present and file his bill of exceptions or report of proceedings at the trial in apt time, and that, hence, the cause is before this Court solely on the common law record. Under Appellate Court Rule 12, Ch. 110, Ill. Rev. Stats., 1957, par. 201.12, the provisions of the Civil Practice Act and the rules of this Court referring to appellant and appellee include, to the extent applicable, plaintiff in error and defendant in error in criminal cases. And under Ap-

pellate Court Rule 2, Ch. 110, Ill. Rev. Stats., 1959, par. 201.2, in all criminal cases in which writ of error is sought, the bill of exceptions, or report of proceedings at the trial, if it is to be incorporated in the record on review, shall be submitted by the plaintiff in error to the trial judge for his certificate of correctness, and be filed, duly certified, in the trial court within 100 days after judgment was entered, or within any extension thereof granted within the 100 days or any extensions thereof. January 24, 1959, was 100 days after October 16, 1958, the date judgment was apparently entered herein. On January 20, 1959, within that 100 days, upon motion of the defendant, an order was entered, according to the abstract, extending the time for filing the report of proceedings to February 14, 1959. According to the abstract the report of proceedings was submitted by the defendant to the trial judge for his certificate and was so certified February 16, 1959, and the Clerk's certificate to the entire transcript of record is dated February 16, 1959. Accordingly, the report of proceedings was late and was not submitted by the defendant to the trial judge for his certificate of correctness and filed, duly certified, in the trial court within 100 days after judgment was entered or within the extension thereof granted within the 100 days. That the report of proceedings, according to the abstract, purports to bear a file mark of the Clerk of the trial court of February 10, 1959, is of no significance, because it was not submitted to the trial judge for his certificate until February 16, 1959, it could not legally effectively be filed until it had first been so duly certified, it was not an effective report of proceedings until so certified, and if it can properly be considered as ever officially filed in the trial court such apparently was as of February 16, 1959, the date of the Clerk's certificate to the whole transcript of record. Nor is it of any significance that

308

we have (as the defendant says in his reply brief) heretofore on May 7, 1959, granted the defendant, upon consent of the People, leave to withdraw a partial record filed by him in an earlier writ of error (which had been dismissed for the defendant's not filing an abstract and brief) and to refile such as part of the complete record in this present case based on a second writ of error; that prior partial record, as the defendant says, did not contain any report of proceedings; the only report of proceedings involved is the foregoing included in the record on his present second writ of error, which was late, as indicated; and our permitting the defendant to withdraw that prior partial record and refile it has, under the circumstances, nothing to do with the proper submission, certification, and filing in apt time in the trial court of a report of proceedings. Accordingly, this cause is before us solely on the common law record. Cf. Lukas v. Lukas (1942) 381 Ill. 429.

■■■■ As to the defendant's first contention that the Court erred in receiving the sealed verdict of the jury and opening it without the jury being present, thereby making it impossible for the defendant to poll the jury, the only references to that in the abstract are that at the trial October 2, 1958, "by agreement it was stipulated that the jury might return a sealed verdict which was to be opened by Judge Irwin C. Taylor on October 3, 1958," the verdict of guilty was signed by all the jurors, and on October 3, 1958, "sealed verdict, duly signed, was opened by Irwin C. Taylor, County Judge, and read by the Court." Under the applicable statute, Ch. 38, Ill. Rev. Stats., 1957, par. 745, in cases of misdemeanor only, if the prosecutor and the person on trial agree, the agreement to be entered on the minutes, that the jury, when they have agreed upon their verdict, may write and seal the same, and after delivering the same to

the Clerk, may separate, it is lawful for the court to carry into effect any such agreement and receive any such verdict so delivered to the Clerk as the lawful verdict of the jury. The present case involves a misdemeanor only: Ch. 95½, Ill. Rev. Stats., 1957, pars. 6—303, 6—401; Ch. 38, Ill. Rev. Stats., 1957, pars. 585, 586. The minutes, as indicated in the abstract, reflect an agreement between the prosecutor and the defendant in substance of the type permitted by the statute, and it was lawful for the Court to carry into effect that agreement and receive such verdict as the lawful verdict of the jury. Further, it may be observed, the abstract does not specifically indicate the jury was not present when the verdict was opened, or that the defendant made any request to poll the jury, or that the Court, without the defendant's acquiescence or agreement, did anything to make it impossible for the defendant to poll the jury. We will not search the record for claimed errors. The abstract prepared by the defendant will be presumed to be sufficient to present fully every error relied upon, and will be taken to be accurate and sufficient unless the opposite party files an additional abstract, which was done here, and then the abstract and additional abstract together will be taken to be accurate and sufficient: Appellate Court Rule 6, Ch. 110, Ill. Rev. Stats., 1957, par. 201.6. All of the cases cited by the defendant, Nomaque v. People (1825) Breese (1 Ill.) p. 145, Reins v. People (1863) 30 Ill. 256, and People v. Blair (1914) 266 Ill. 70 involved felonies and, for that and other reasons, are not here in point.

 As to the defendant's second contention that the Court erred in not following the provisions of the statute in selecting the panel of jurors, the only manner in which a petit jury can be objected to is by filing a challenge to the array in the trial court, if it is desired to raise any question as to the legality of the petit jury and save such question for review; the

abstract and record here fail to show that any challenge to the array of veniremen from whom was chosen the jury which tried the case was filed in the trial court and therefore no question in this respect is preserved for review: People v. Shipman (1953) 414 Ill. 393; the defendant waived all right to question the manner in which the jurors had been drawn by his failure to challenge the array and accepting the jury which tried the case: People v. Conners (1910) 246 Ill. 9. That the defendant may have earlier at a prior stage of the case filed a challenge to the array of another, previous, and entirely different venire ordered June 27, 1958, returnable July 10, 1958, which was overruled, and which venire had been dismissed, the case being continued for trial at a later date, has nothing to do with the wholly distinct and different venire ordered September 25, 1958, returnable October 2, 1958, from which the jury which actually tried the case was chosen, and the defendant refers us to no authority that such an earlier challenge to the array of a prior and different venire from which the actual trial jury was not selected and which was dismissed can be considered a legally effective challenge to the array of a subsequent and distinct venire from which the actual trial jury is selected, or as a substitute for such challenge, or as an excuse for not making such challenge. Furthermore, the applicable statute, Ch. 37, Ill. Rev. Stats., 1957, par. 282, provides that unless the court shall otherwise order, the jury for the county court shall be drawn and summoned in the same manner as juries for the circuit court; when a jury is not summoned as so provided, the court, as often as it deems necessary, shall call all the cases for trial on the docket to ascertain whether a jury will be required; if a jury shall be required the court shall thereupon set such case or cases for trial and direct the clerk to issue a venire for not less than 12 nor more than 24 and deliver the same to the sheriff or

coroner who shall summon such jurors from the body of the county to appear at the time set for the return of the venire; and in case any party interested, or any attorney, objects to any sheriff selecting the jury, if the court thinks such objection reasonable, the court shall appoint an impartial bailiff to summon such jury. There is nothing to indicate the Court did not follow the provisions of that statute prior to and in its order of September 25, 1958, directing the clerk to issue the venire returnable October 2, 1958, from which was selected the trial jury. There was no objection by the defendant or his attorney to the Sheriff's selecting the jury. The defendant had no right to have the jury drawn and summoned in the same manner as juries for the circuit court if the court otherwise ordered, as it did. There is nothing to indicate the Sheriff selected this venire to try this one individual case only. The order of September 25, 1958, does not direct the Clerk to issue a venire for jurors to try this particular case and no other. The Court did not authorize the Sheriff to select a panel of jurors for the sole purpose of trying this particular case. Under the statute the Sheriff (or Coroner) is the party who has to summon the jurors from the body of the county, unless the defendant or his attorney objected, which they did not. People v. Mankus (1920) 292 Ill. 435, People v. Schraeberg (1932) 347 Ill. 392, and People v. Lembke (1926) 320 Ill. 553, referred to by the defendant, do not at all militate against our views—in all of those cases proper challenges to the array were made in apt time, and only the Mankus case involved a jury trial in a County Court.

The defendant's third and fourth contentions—that the Court erred in admitting incompetent evidence at the hearing on aggravation and mitigation, and in refusing to give two instructions tendered by the defendant—are matters in the report of proceedings, which is, for the reasons indicated, not properly a

part of this record and those matters are, hence, not before us for consideration.

As to the defendant's fifth contention that the Court erred in imposing an excessive penalty, not proportionate to the nature of the offense, the sentence is for 180 days at the State Penal Farm at Vandalia. The statute, Ch. 95½, Ill. Rev. Stats., 1957, par. 6—303, provides, so far as material, that any person who drives a motor vehicle on any highway of this State at a time when his operator's license is revoked shall be punished by imprisonment for not less than 7 days nor more than 1 year and there may be imposed in addition thereto a fine of not more than $1000. The sentence here is well within the statute. A punishment authorized by law cannot be said to be disproportionate to the nature of the offense unless the law itself under which the punishment is imposed is subject to the objection; where a sentence is imposed within the limits of the statute, as here, no constitutional question with respect to the punishment being disproportionate can be involved by merely assailing the sentence; it is necessary to attack the law itself and show it violates some specific provision of the constitution in order to raise the question, which the defendant here has not done: People v. Brickey (1947) 396 Ill. 140; the sentence here is not a cruel or degrading punishment not known to the common law, or a degrading punishment which had become obsolete in the State prior to the adoption of the constitution, nor is it so wholly disproportioned to the offense committed as to shock the moral sense of the community: People ex rel. Bradley v. Illinois State Reformatory (1894) 148 Ill. 413. The nature, character, and extent of the penalties for a particular criminal offense are matters for the legislature, primarily; this sentence, being within the limits prescribed by the legislature, will not be disturbed—it does not clearly appear to be a great departure from the fundamental

313

law or to be manifestly in excess of the proscription of Section 11 of Article II of the Illinois Constitution requiring all penalties to be proportioned to the nature of the offense, and there was no abuse of the trial court's judicial discretion: People v. Smith (1958) 14 Ill.2d 95. The language at the bottom of the verdict, below the jurors' signatures, "with recommendation for maximum leniency," is surplusage and has no legal significance: People v. Manning (1943) 320 Ill. App. 143—it would not have been proper for the jury to attempt to fix the punishment: People v. Lenihan (1957) 14 Ill.App.2d 490. The offense under the statute, so far as material, is driving a motor vehicle on a highway at a time when the operator's license is revoked—the particular distance the defendant may have so driven under such circumstances is immaterial so far as commission of the offense is concerned. The particular intent, knowledge, moral turpitude, if any, or purity of motive, if any, of the defendant are also immaterial on the question of guilt under this particular statute: Cf. People v. Player (1941) 377 Ill. 417. Price v. People (1884) 109 Ill. 109, referred to by the defendant, did not involve the present statute or the present offense.

As to the defendant's sixth contention that the Court erred in denying his motions for new trial, and in arrest of judgment, and for release on probation—his motion for new trial was oral, not written, we cannot ascertain from the abstract what the claimed grounds therefor may have been, but to the extent it may relate to matters in the report of proceedings such is not before us for consideration, and to the extent it may relate to matters in the common law record we see no basis therefor; there was no motion in arrest of judgment; and the motion for probation relates to matters in the report of proceedings which are not before us for consideration.

314

■ ■ As to the defendant's seventh and last contention that he did not receive a fair and impartial trial, there is no contention by the defendant that the trial judge, who presided on a change of venue allowed as requested by the defendant, was not fair and impartial, or that the jury, which the defendant accepted apparently without exhausting all his available challenges, was not fair and impartial. That the arresting officer, the chief prosecuting witness, was a prejudiced witness, if he was, as the defendant says, does not make the trial not fair and impartial where there is nothing to indicate the defendant was at all restrained from bringing any such relevant facts and circumstances to the jury's and judge's attention, or from having the jury properly instructed as to the credibility, bias, and prejudice, if any, of witnesses. Nor does the report of the probation officer on the defendant's motion for probation, after the verdict, which report the defendant says was prejudicial, or the allegedly incompetent evidence at the hearing on aggravation and mitigation (where the defendant offered no evidence at all in mitigation) make the trial unfair and impartial. The Court then hearing those matters without a jury is presumed to have disregarded any incompetent proof or offers of proof, if there were any, in the absence of any showing to the contrary. And, certainly, the mere fact the sentence is greater than the defendant thinks appropriate does not mean the judge was not fair and impartial.

The judgment, accordingly, will be affirmed.

Affirmed.

SOLFISBURG, P. J. and WRIGHT, J., concur.