THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAY E. DURFLINGER, Defendant-Appellant.

Third District   No. 77-488

Opinion filed December 8, 1978.

Robert Agostinelli and Gary R. Garretson, both of State Appellate Defender's Office, of Ottawa, for appellant.

James R. Fritze, State's Attorney, of Watseka (Gale C. Coil, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

The defendant, Ray E. Durflinger, appeals from his conviction of driving while his driver's license was revoked. Defendant was convicted of driving while his driver's license was revoked and escape following a bench trial in the Circuit Court of Iroquois County. He received concurrent sentences of 364 days for each conviction.

On appeal the defendant phrases the one issue presented as whether the State failed to prove his guilt of driving while his license was revoked beyond a reasonable doubt where the eyewitnesses' identifications were insufficiently positive to identify the defendant as the person who committed the crime charged.

The incident on which defendant's convictions were based allegedly

stemmed from citizen complaints of the defendant allegedly "hotrodding" a car through the streets of Effner in Iroquois County, Illinois, on May 21, 1977. Defendant was identified by two eyewitnesses as the driver of a car speeding and squealing tires on the day alleged. Defendant challenges the testimony of both witnesses claiming they are insufficiently positive in their identification of him as the driver of the car. Their testimony will be analyzed at length. Testimony was also given by Deputy Sheriff Kenneth Garfield. He testified that on May 21, 1977, at approximately 4 p.m. he proceeded to Effner in response to a call that defendant was driving a car in a reckless manner. Garfield indicated that to respond to the call took him approximately 15 minutes. He reported that when he first arrived in town he saw defendant near a dark blue Malibu automobile and stopped and talked to him. Defendant denied any knowledge of the incident. Deputy Garfield then went on to interview the complaining witnesses and came back to talk to the defendant, this time finding him underneath the same blue car, which had the front end raised up on jacks. Defendant was placed under arrest. He was then allowed to go into the house to get a shirt because the one he was wearing was dirty. The defendant did not come out after going into the house and was apprehended a considerable time later and charged not only with driving while his license was revoked but also with escape for fleeing from Deputy Garfield after he was placed under arrest.

Defendant's only serious argument on appeal is his attack on the testimony of two eyewitnesses to his allegedly driving the car in question. The report of proceedings was not transcribed by a court reporter. We will, therefore, briefly summarize the testimony of both witnesses as it appears in the supplemental record, an agreed statement of facts prepared from a tape recording of the trial testimony. The first witness, Dale Brandenburg, testified to observing the car from his yard at a distance of 35 to 40 feet. He testified that the car went by three or four times and that he was able to observe the driver of the car whom he identified as the defendant, Ray E. Durflinger. On cross-examination by defense counsel regarding the witness' ability to identify the defendant, Brandenburg further stated that he had seen the defendant prior to May 21, 1977, "a couple of times" and once earlier that day. On examination by the court and then upon further cross-examination witness Brandenburg expressed some uncertainty as to his prior unqualified identification of defendant. He finally concluded by stating that "it looks something like him [the defendant]" and "it just had to be him [the defendant]," "it sure looked identical to him [the defendant]" and also admitted that he could be mistaken. We agree with defendant's argument that the identification by witness Brandenburg is somewhat vague and uncertain and not

sufficiently positive to sustain a criminal conviction by itself. *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444; *People v. Martin* (1968), 95 Ill. App. 2d 457, 238 N.E.2d 205.

■■ The second eyewitness to testify was Robert Wood. Unlike the testimony of Brandenburg, Wood's testimony contains no uncertainty as to the defendant's identification as the driver of the vehicle he observed on May 21, 1977, at about 4 p.m. He positively identified the defendant as the driver. Wood was also well acquainted with the defendant having known him 3 or 4 years which substantially bolsters his identification. He stated on cross-examination that he was positive it was the defendant. Defendant argues that Wood's identification is tainted by his statement that the car being driven was a red Chevy instead of a blue one. We find little merit in defendant's argument. A failure to recall the color of the speeding car, two months after the event, is only of minor consequence, particularly where the witness was well acquainted with the driver, had ample opportunity to observe, and positively identified the driver. Precise accuracy is unnecessary where the identification is positive. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Hanson* (3d Dist. 1976), 42 Ill. App. 3d 592, 356 N.E.2d 447.) Further the evidence does not mandate the conclusion that the car the defendant was allegedly driving was red or blue. In light of this we believe the failure of witness Wood to recall the color of the car is irrelevant to his otherwise positive identification. The testimony of a single witness with ample opportunity to observe who is positive in his identification is sufficient to support a conviction. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) We believe witness Wood was positive in his identification and that his inability to recall the color of the car does not require reversal.

■■ It is immaterial that the blue car Deputy Garfield found on jacks was the car allegedly driven by the defendant. It appears that Deputy Garfield concluded that it was. In any event we disagree with the importance defendant places on the theory that he was underneath the jacked up car when Deputy Garfield first arrived and when he later returned to arrest the defendant. Whether the car was up on jacks with defendant underneath it and whether defendant's clothes were greasy and dirty from working under the car has little probative value as to the ultimate question before the trial court in this bench trial. Such argument ignores the positive eyewitness identification of the defendant as having been seen driving a car which was the disputed element of the crime charged in this case. *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897, sets forth the two propositions which must be proved to sustain the charge of driving while license revoked: First it must be proved that the defendant drove a motor vehicle upon a highway of the State of Illinois,

and second that he did so at a time when his driver's license was revoked. Both propositions were proved beyond a reasonable doubt in the instant case. The judgment conviction entered by the Circuit Court of Iroquois County is affirmed.

Judgment affirmed.

ALLOY and STENGEL, JJ., concur.